sjrubenstein@me.com
502 River Street | Steven J. Rubenstein | 423-580-4610
Chattanooga, TN 37405

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE, CHATTANOOGA DIVISION

FILED
SEP 16 2019
Clerk, U. S. District Court
Eastern District of Tennessee
At Chattanooga

Steven Rubenstein ("Rubenstein"),
*PLAINTIFF*
v.
1. University of Tennessee ("UT"—
Named Officials, Official Capacity Only:
a. Matthew Scoggins, General Counsel,
b. Katrice Morgan, ALJ,
c. Wayne Davis, Interim Chancellor, UTK,
d. Linda Martin, VP, Academic Affairs,
e. Mark Whorton, ED, UTSI);
2. Academy Cowards ("Cowards"—
Steve Salky and Co-Conspirators);
3. Defendants 1 and 2 in Collusion;
4. American Academy of Actuaries ("Academy");
5. Society of Actuaries ("Society"),
*DEFENDANTS*

Civil Action No. 1:19-CV-00189

Judge Mattice

Magistrate Judge Lee

PLAINTIFF'S CONSOLIDATED OPPOSITION TO
1) DEFENDANT THE UNIVERSITY OF TENNESSEE'S MOTION TO DISMISS [DOCS 8, 9] AND
2) DEFENDANTS ACAD. CWDS.'/AM. ACAD. OF ACTS.' MOTION TO DISMISS [DOCS 11, 12]
AND MEMORANDUM IN SUPPORT

## OPPOSITION OVERVIEW

**The Defendants are nearing success at tossing Rubenstein's life—at 66 years, of sound mind, and well-meaning—with *no* judicial review:**

○ **UT**, his alma mater, **having invoked a prior restraint against him**, to end his inquiry into the most verifiable science; and

○ **the Academy Cowards** (name explained below) using the fallout from that **to defraud this Court into missing their having *expelled him from the Academy and the Society without cause or process*!**

Rubenstein again implores that he offers his every *word* under penalty of perjury, while the Academy Cowards have, amazingly, deceived this Court into evading answering yet. But **their lie is so unbelievable of not "getting" that he *did* "state a claim"—based on *illegally expelling him from the Academy and the Society without cause or process*, especially considering that they had had AUSA Perry Piper falsely prosecute him in trying—as to *prove* their *fraud on this Court*!**

And, now, UT, having, in No. 1:16-cv-00475, witnessed the Cowards' deception-by-feigned-ignorance succeed, **adopts the strategy for its own.**

**Having worked on this incessantly, Rubenstein disbelieves that his having then not yet known to file a Fed. R. Civ. P. 59(e) motion permanently *seals* their fraud on this Court.** (Although uncertainty as to how to *rectify* it has resulted in his overlapping this with No. 1:16-cv-00475 and with No. 3:18-cv-00170 in the Eastern District of Arkansas.)

Finally, fearing that his separate Replies [Docs. 49 and 50 (unfortunately split into 50 and 51)] to the Oppositions to his Motion for Relief from Dismissal of No. 1:16-cv-00475—further separate from his Response [Doc. 16] to the Society's Motion for an Extension—might have left some confusion, **Rubenstein, by this, clarifies all.**

## MEMORANDUM IN SUPPORT OF OPPOSITION

| TABLE of CONTENTS | page |
|---|---|
| OPPOSITION OVERVIEW | 1 |
| MEMORANDUM IN SUPPORT OF OPPOSITION | |
| Table of Contents (this) | 3 |
| Table of Authorities | 3 |
| 28 U.S.C. § 1746 Declaration under Penalty of Perjury | 5 |
| I. PERVERTING THE ORDER GOVERNING MOTIONS TO DISMISS | 6 |
| II. "INTO THAT ANCIENT FELLOWSHIP," *IN RE SNYDER*, 472 U.S. 634, 644 (1985) | |
| A. Discovery... | 8 |
| B. ...versus Obfuscation | 9 |
| III. UT'S MOTION TO DISMISS WARRANTS AN ESTOPPEL | |
| A. UT Joins In | 16 |
| B. UT Misses Out | 19 |
| IV. THE ACADEMY COWARDS *ARE* FRAUDS ON THE COURT! | |
| A. A 12(b)(6) Motion Won by Hiding a Claim Cannot Be Res Judicata | 26 |
| B. The Academy Cowards Have Defaulted | 31 |

| TABLE of AUTHORITIES | page(s) |
|---|---|
| **Constitution** | |
| U.S. Const. Amend. I | 12, 21, 22 |
| U.S. Const. Amend. XIV | 17, 19.,22 |
| **Statutes** | |
| 18 U.S.C. § 1961(4)- RICO Act | 10, 31 |
| 28 U.S.C. § 1404(a)- Change of Venue | 13 |
| 42 U.S.C. § 1983 - Civil Rights Act of 1871 | 19 |
| Tenn. Code Ann. §§ 4-5-100 - 4-5-325 – Tennessee APA | 17 |
| **Rules** | |
| Fed. R. Civ. P. 8(a) – Claim for Relief | 15, 17, 24 |
| Fed. R. Civ. P. 11(b) – Representations to the Court | 26 |
| Fed. Rs. Civ. P. 12(b)(6) – Failure to State a Claim | 11, 27, 31 |
| The Fed. R. Civ. P. 26 - Duty to Disclose; Gen. Provs. Gov'g. Discovery | 8 |
| Fed. R. Civ. P.60(b)(6)- Any Other Reason | 13, 28 |

| | |
|---|---|
| Fed. R. Civ. P. 60(d)(3)- Set Aside for Fraud on the Court | 12, 28 |
| **Cases** | |
| *ASME, Inc. v. Hydrolevel Corp., 456 U.S. 556, 570 (1982)* | 12 |
| *Costello v. US*, 365 US 265, 284 (1961) | 12 |
| *Cracker Barrel Old Country v. Epperson*, 284 SW 3d 303, 314-15 (Tenn. 2009) | 24 |
| *Daubert v. Merrell Dow Pharma.*, 509 U.S. 579 (1993) | 9, 21 |
| *DeLong v. Vanderbilt University*, 186 S.W.3d 506 (Tenn.Ct.App. 2005) | 12 |
| *Demjanjuk v. Petrovsky*, 10 F. 3d 338, 352 (CA6 1993) | 13 |
| *Eisenstein v. Ebsworth*, 148 F. App'x 75, 78 (3d Cir. 2005) | 25 |
| *Federated Dep't Stores, Inc. v. Moitie*, 452, U.S. 394 (1981) | 30 |
| *Ferens v. John Deere Co.*, 494 U.S. 516 (1990) | 13 |
| *Hazel-Atlas v. Hartford*, 322 U.S. 238, 244 (1945) | 12 |
| *Hardy v. Lawrence County Court of Common Pleas*, No. 1: 15-CV-373, 2015 WL 6964680, at *3 (S.D. Ohio Nov. 10, 2015) | 25 |
| *Jackson v. Smith*, 387 SW 3d 486, 494 (Tenn. 2012) | 30 |
| *Jenkins v. Orchards Children's Servs.*, No. 11-13356, 2012 WL 3639116, at *5 (E.D. Mich. May 18, 2012), *report & recommendation adopted*, No. 11-CV-13356, 2012 WL 3647071 (E.D. Mich. Aug. 23, 2012) | 25 |
| *Kuhnle Brothers, Inc. v. County of Geauga*, 103 F. 3d 516 (CA6 1997) | 23 |
| *New Hampshire v. Maine*, 532 US 742, 749 (2001). | 24 |
| *NY Life Ins. Co. v. Nashville Trust Co.*, 292 SW 2d 749, 755 (Tenn. 1956) | 30 |
| *Plaut v. Spendthrift Farm, Inc.*, 514 US 211, 217-218 (1995) | 29 |
| *Rounds v. Clements*, No. 11-1220 (CA10 Aug. 31, 2012) | 22 |
| *United States v. Reyes*, 307 F. 3d 451 (CA6 2002) | 17 |
| **Other** | |
| Brazil, The Adversary Character of Civil Discovery: A Critique and Proposals for Change, 31 *Vand. L. Rev.* 1348 (1978) | 8 |
| Isaacson, *Einstein: His Life and Universe* (Simon & Schuster Paperbacks, 2007) | 9-10 |

| UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE, CHATTANOOGA DIVISION | | |
|---|---|---|
| **Steven Rubenstein** ("Rubenstein"),<br>*PLAINTIFF*<br>v.<br>1. **University of Tennessee** ("UT"—<br>Named Officials, Official Capacity Only:<br>a. Matthew Scoggins, General Counsel,<br>b. Katrice Morgan, ALJ,<br>c. Wayne Davis, Interim Chancellor, UTK,<br>d. Linda Martin, VP, Academic Affairs,<br>e. Mark Whorton, ED, UTSI);<br>2. **Academy Cowards** ("Cowards"—<br>Steve Salky and Co-Conspirators);<br>3. **Defendants 1 and 2 in Collusion**;<br>4. **American Academy of Actuaries** ("Academy");<br>5. **Society of Actuaries** ("Society"),<br>*DEFENDANTS* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. No. 1:19-cv-00189<br>Judge Mattice<br>Magistrate Judge Lee |
| 28 U.S.C. § 1746 DECLARATION UNDER PENALTY OF PERJURY | | |

Plaintiff Steven Rubenstein declares under penalty of perjury that this Opposition and Supporting Memorandum to Defendants UT's and to Defendants the Academy Cowards' / the American Academy of Actuaries' Motions to Dismiss is true and correct to the best of his knowledge.

Executed on

September 13, 2019
Date

Steven Rubenstein

Steven J. Rubenstein, Declarant
502 River Street
Chattanooga, TN 37405
sjrubenstein@me.com
423-580-4610

## I. PERVERTING THE ORDER GOVERNING MOTIONS TO DISMISS

Rubenstein knows of no effort by UT to "confer" regarding its motion.

As for the Academy Cowards, Rubenstein had invited Zuckerman Spaeder LLP to talk *before receiving* this Order. Yet, given that the Academy Cowards had falsely criminally prosecuted him to *avoid* talking, and *lie unmercifully* to avoid answering his Complaints, they could not be expected to "meet and confer" on anything—which they have not. Although Dermot Lynch (same firm) wrote, in paragraph two (of two), in a letter received, July 17, 2019, (**Exhibit 1a**, attached):

> Pursuant to Judge Mattice's order governing the Motion to Dismiss, I wish to meet and confer with you by telephone[,]

*he had declared his true intent in paragraph one:*

> I respectfully request that you withdraw this complaint immediately[—]

on the Court's authority, no less—that is, that No 1:19-cv-00189 is

> barred by Judge Mattice's prior order, . . . denying your prior complaint containing the same alleged claims and denying you the right to amend [it].

Then, as Rubenstein was further inundated, alongside UT's motion to dismiss, by the Academy Cowards' filings (in all three civil actions)—which, since they have all the information, could serve only to obfuscate

slow—a voice mail, on July 22, 2019, from Attorney Steven Salky (same firm) (which Rubenstein found rather creepy, Salky being the one who *twice* tried to have him put away) conveyed approximately the same demand. (Rubenstein mentioned these in his Reply [Doc. 51, pp. 8-9] to the Cowards' Opposition to his Motion for Relief from Dismissal.)

Lynch's Certificate of Compliance [Doc. 11, p. 3] *thus* certifies having raised *merely* "withdrawal of the Complaint"—*not* its amendment—as if *ordered by the Court*, at that. (While possibly due to Lynch's having a bad day, his footnote—meant to show Rubenstein's acknowledgement of the letter—bizarrely states that Rubenstein had not answered "whether he would withdraw the *motion to dismiss*" (emphasis added).)

Thus, after sleazily defrauding this Court into missing the Academy Cowards' illegal expulsions of Rubenstein (which they knew could not stand under judicial review) in No. 1:16-cv-00475, they now attempt to defraud the Court into sealing the expulsions as res judicata—which is the subject of the part of this memorandum opposing them.

*The Academy Cowards have thus, once again, wasted everyone's time*, here, by hailing their latest "offer that Rubenstein can't refuse" as compliance with the Court's Order Governing Motions to Dismiss.

## II. "INTO THAT ANCIENT FELLOWSHIP," *IN RE SNYDER*, 472 U.S. 634, 644 (1985)

### A. Discovery...

**Rubenstein finds support at last for his proposition that *allowing liars like the Academy Cowards to offer input not under penalty of perjury merely wastes everyone's time*,** in effect, rendering the ban against ex parte communication pointless. The Fed. R. Civ. P. 26 Advisory Notes, regarding the 1993 Subdivision (a) Amendment imposing duties to disclose without request, cites Brazil, The Adversary Character of Civil Discovery: A Critique and Proposals for Change, 31 *Vand. L. Rev.* 1348 (1978). In that, Judge Brazil ranks "devising a set of controls, encouragements, and sanctions that would maximize compliance with this duty," as "critically important" and includes the possibility of requiring

> counsel and client to swear under oath on every disclosure occasion and at the close of the pretrial period that they had searched diligently for and disclosed all information that arguably might be relevant to the dispute in question.

*Id.* at 1353. After Steven Salky hesitated not the least to obstruct justice by having Rubenstein falsely arrested and prosecuted (including by AUSA Piper in *this* Court), Catherine Duval and now **Dermott Lynch** have lied *unmercifully* to the Court—uttering not a *word* of truth!

## B. … versus Obfuscation

1. These frivolous Defendants choose to obfuscate the greatest advancement in science, lying beneath this—as verifiable s it gets, *Daubert v. Merrell Dow. Pharma.*, 509 U.S. 579 (1993)—to perpetrate this crime against nature (physics is Greek for "nature"), instead.

2. **It started when Rubenstein returned to his alma mater in 2009 at age 56, baffled why Mendel Sachs's (1927-2012) work is not being recognized.** Sachs had long discovered the grail that (almost only) Albert Einstein (1879-1955) sought, completing Einstein's theory of general relativity ("GR"), which explains quantum mechanics ("QM"), as (almost only) Einstein had thought it would—the virtual *opposite* of what is being taught. Not to compare himself to Einstein (or to Sachs), but Rubenstein has since learned that what was driving him—the tragic loss that will result if Sachs's work remains so little known—is not dissimilar to what had driven Einstein:

> "I shall never ever solve it. It will be *forgotten* and must later be *rediscovered* again." [n. 19. Einstein to Maurice Solovine (Olympia Academy friend and his Paris publisher.), Nov. 25, 1948, AEA 21-256.]

Walter Isaacson, *Einstein: His Life and Universe* (Simon & Schuster Paperbacks, 2007) (emphasis added): KLs 9144-9147; and

> When a colleague asked him… why he was…—perhaps squandering—his time in this lonely endeavor…, Einstein said, *it was his duty to do it.* [n. 21. Whitrow, Gerald J. 1967. Einstein: The Man and His Achievement. London: BBC, xii.].

*Id.* (emphasis added). KLs 9155-9161.

2. **Rubenstein was also endeavoring throughout (to leave SSDI) to return to actuarial work, including by networking with former colleagues Tom Wildsmith and Cori Uccello, in Washington, D.C.** Yet, with UT General Counsel Matthew Scoggins bent on obliterating Rubenstein's intentions—and physics itself, it seems, (the most "verifiable" science)—sensing a void of support (science is important to actuaries, too), Rubenstein, on September 25, cracked at last, irrationally flying an insolent email at Wildsmith and Uccello (for which he tried apologizing many times).

3. **The enterprise best identified as 18 U.S.C. § 1961(4) conspiratorial association-in-fact the Academy Cowards, within days, shut him out until, on November 16, 2012, Rubenstein threatened to sue, which Salky precluded by having him falsely arrested and prosecuted.**

4. Once the Franklin County, Tennessee, prosecutor, on June 24, 2013, took it on herself to *nolle pros* that trap (laid by a UT official), Rubenstein began, after a long layoff, studying for what was to be his

last exam for Fellow in the Society of Actuaries (FSA). However, not only did the Defendants' incessance thwart that, but the Society—which audits a handful of members' "continuing professional development" each year—audited him for 2013-2014. (**Exhibit** 2a, attached, [No. 1:16-cv-00475, Doc. 9-1, p. 57] shows that he *passed* the audit). Then, though Rubenstein continued to offer peace, the Actuarial Board for Counseling and Discipline ("ABCD") continued their scripted creation of a false "record" for defrauding rather than respond. (See, for example, the No. 1:16-cv-00475 First Amended Complaint ("FAC"), pp. 52-53.)

5. **Just as law enforcement's and tribunals' not questioning these liars had convinced Rubenstein that his only chance was to include so much detail in his No. 1:16-cv-00475 FAC [Doc. 9], Salky's partner Catherine Duval responded, not to the FAC, but by aiming for a Fed. R. Civ. P. 12(b)(6) dismissal to blindly preclude the Cowards' illegal expulsions of Rubenstein from ever receiving judicial review** [Docs. 19, 20, 27, 40]—and hit bullseye (warranting her inclusion as a Coward).

6. **Rubenstein assessed as quickly as he could that:**

a. Statutes of limitations not having run, and (for whatever the appearance) there not having been "at least one decision on a right

between the parties," *Costello v. US*, 365 US 265, 284 (1961), **invoking res judicata would merely exalt form over substance.**

b. **This being perpetrated by**—as "This Makes Twice That the Cowards Have Duped This Court (Fed. R. Civ. P. 60(d)(3))," in the No. 1:16-cv-00475 Motion for Relief from Dismissal [Doc. 46, pp. 7-9] exhibits—**"officers of the court" makes is "fraud on the court"** (as held in *Demjanjuk v. Petrovsky*, 10 F. 3d 338, 352 (CA6 1993)). Worse, the factor in *Hazel-Atlas v. Hartford*, 322 U.S. 238, 244 (1945), that

> [t]his matter does not concern only private parties. There are issues of great moment to the public in a patent suit.

cannot have more gravity than **the—absurdly unregulated—Academy Cowards using UT's First Amendment-violative stifling of science as occasion to attract a particular class of attorneys which finds the Cowards' $ millions in tax-exempt net assets irresistible, to effect their own government** (of the sort described in *ASME, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 570 (1982)):

> ASME can be said to be "in reality an extra-governmental agency, which prescribes rules for the regulation and restraint of interstate commerce." *Fashion Originators' Guild of America, Inc. v. FTC*, 312 U. S. 457, 465 (1941).

c. Rubenstein also contends that **his having to face off with *two* Goliaths**—notwithstanding the physics absurdity—**could bring even Fed. R. Civ. P. 60(b)(6) into sight**. This situation has some similarity to the quandary in *DeLong v. Vanderbilt University*, 186 S.W.3d 506 (Tenn.Ct.App. 2005), whereby a Fed. R. Civ. P. 60(b)(6)-equivalent motion was granted to modify a dismissal order to "not on the merits" where opposing attorneys had used its defaulting to "on the merits" to have a parallel federal proceeding dismissed based on res judicata.

7. **Rubenstein ultimately trifurcated the matter**, (1) filing his Motion for Relief from Dismissal of No. 1:16-cv-00475 [Doc. 46] and (2) new civil action, No. 19-cv-00189, **to find which better fits**, while (3) (after giving a 'heads up" in No. 1:16-cv-00475 FAC [Doc. 9, p. 108], which the Cowards *had* noticed [Doc. 20, p. 2]), **filing the libel claim as Civil Action No. 1:18-cv-00170 in the Eastern District of Arkansas.**

8. As the No. 1:19-cv-00189 Complaint asserts

> Rubenstein will (Fed. R. Civ. P. 1404(a)) move the U.S. District Court for the Eastern District of Arkansas for transfer of venue of Rubenstein v. Am. Acad. of Actuaries, No. 3:18-cv-00170 (E.D.Ark. pend.) to this Court. (*Ferens v. John Deere Co.*, 494 U.S. 516 (1990)).

[Doc. 1, ¶ 6] **Though Rubenstein wanted to raise that motion quickly,** the Defendants' continued addling made ***most*** **important getting "The Defendants Have Been Obstructing Remedy Since 2012" right—the point of which is to show that the Defendants were too *involved* in Rubenstein's claims not to "get" them.** While not surprising that, in the time it took to complete that, the Defendants in the matter in Arkansas—the Academy and the Society—had delivered discovery requests, **the Academy Cowards now have *eight* attorneys (plus inhouse) *continuing the ruse that Salky began* by having Rubenstein arrested to preclude his filing suit, now, piling up discovery requests to which Rubenstein**—who, these years later, is still trying to set straight that *they* control the information—**has not been able to field quickly enough (not even considering the matter with UT).**

9. **On Rubenstein's completing "The Defendants Have Been Obstructing Remedy Since 2012"** (placed at the end of his No. 1:16-cv-00475 Motion for Relief from Dismissal [Doc. 46] and at the end of III. Statement of Claim in the No. 1:19-cv-00189 Complaint [Doc. 1]), **the Cowards' continuing to feign ignorance** (for instance, Duval, in her Opposition [Doc. 48] to Rubenstein's Motion for Relief from Dismissal

[Doc. 46] of No. 1:16-cv-00475, lying that "it remains a virtually incomprehensible mishmash," along with Lynch's similar repugnant pleas of aloofness in his Motion to Dismiss and support [Docs. 11 and 12]) **should, alone, *prove* their dishonesty!** Now, **having seen it work for the Cowards in No. 1:16-cv-00475, UT joins the game.**

10. The one additional fact which might have aided understanding by including in "The Defendants Have Been Obstructing Remedy Since 2012" is that **UT and the Cowards had Rubenstein arrested and prosecuted** ***jointly*** [No. 1:16-cv-00475, FAC (Doc. 9), ¶ 164]—which UT fails to recognize, while the Cowards use UT's myth to breathe credence into theirs. Regardless, *the mess resulting from having to fend off two Goliaths is not Rubenstein's doing*, but makes clear the need for a corollary to Fed. R. Civ. P. 8(a): **showing entitlement to relief can be only as short and plain as defendants' complicating it allows. Or, at least** "[w]hat constitutes a short and plain statement must be determined in each case on the basis of the nature of the action, the relief sought, and the respective positions of the parties in terms of the availability of information and a number of other pragmatic matters." 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1217 at 240-41 (3d ed. 2004).

## III. UT'S MOTION TO DISMISS WARRANTS AN ESTOPPEL

### A. UT Joins In

1. The theme of Defendant UT's Motion to Dismiss the No. 1:19-cv-00189 Complaint [Doc. 1] is, not only does it "not contain a short and plain statement of the claim," but it does not even "present any facts or claim in a manner in which the University could answer or prepare to defend" [Doc. 8]—also expressed more fully, as repeated below, and summarized as "incomprehensible" in UT's support [Doc. 9].

2. But Rubenstein believes the reality to be that the Complaint [Doc. 1] presents all information needed and thereby exposes UT as *having* no defense. UT thus shifts to this deemed "safest" stance, which should warrant invoking a judicial, or equitable, estoppel.

3. True, UT, in its Response [Doc. 47] to Plaintiff's Motion for Relief from Dismissal of Civil Action 1:16-cv-00475 [Doc. 46], did plead that "Plaintiff's motion is nearly indecipherable"—which prompted Rubenstein's reply that it is the Defendants who "entwined themselves, leading to this very fact-bound catastrophe" [Doc. 49]. Rubenstein expounds that, due to Scoggins's setting him up for the Academy Cowards' tactics, rather than

letting him explain, he has had to spend too much time unraveling not to know *unequivocally* that it is not "indecipherable"!

4. (Figuring into this are: (a) the necessary corollary to Fed. R. Civ. P. 8(a), that showing entitlement to relief can be no shorter or plainer than the defendants' complicating it allows, (b) the Academy Cowards having intentionally generated nothing but noise to confuse the Court, and (c) "The Defendants Have Been Obstructing Remedy Since 2012" timeline showing that the *Defendants* had been too involved in Rubenstein's claims to be truly buffaloed by his pleading.

5. That timeline shows, **regarding UT**, that **Scoggins** (largely through his ALJ, Katrice Morgan), although citing the Tennessee APA (Tenn. Code Ann. §§ 4-5-100 - 4-5-325), **is using Rubenstein's having missed a "hearing" to preclude any realistic AMEND. XIV procedural process "due" him, to banish the science that had brought him.** In *United States v. Reyes*, 307 F. 3d 451 (CA6 2002), the court, after the Government, on January 31, 2000, asked that the criminal forfeiture defendant produce documents by March 01, 2000, waited until September 25, 2000—208 days—before entering its final order of forfeiture. Here, Scoggins works against the public not to allow Rubenstein to compensate *in any way* for

his having missed a "hearing" by *eight days*… understandable, given that, if UT had had any thought of considering *facts*, it would not have *called* for a "hearing." Yet, despite this assurance that it could have served no purpose (except to invoke prior restraint if missed), Rubenstein *still would have attended if he had known of it.* (Detailed facts are on No. 1:16-cv-00475 FAC [Doc. 9, pp. 33-42].)

6. The reason Rubenstein was oblivious is that UT had already wasted *months* with this, amid which Mendel Sachs had *died*, and he was determined to summarize Sachs's findings, to salvage *something*. Preliminaries are in No. 1:16-cv-00475, Doc. 9-3, pp. 183-218), but Rubenstein eventually finished this: ***Exhibit 3*** **[Doc. 46-3]** to his Motion for Relief from Dismissal [Doc. 46]. ***Given that physics is "verifiable," if Scoggins had "law" in mind, he would explain why this does not render what is being taught (including at UT) a fairytale!***

7. If UT finds the "indecipherability" to stem from the phrase "prior restraint," Black's Law Dictionary, sixth edition, says of it that

> [a]ny system of prior restraints of expression bears a heavy presumption against its constitutional validity, and the Government carries a heavy burden of showing justification for imposition of such a restraint" and that "[p]rior restraints on speech and publication are the most serious and least tolerable infringement on First Amendment Rights."

(And the No. 1:16-cv-00475 FAC [Doc. 9] does not mince calling UT's prior restraint, a "prior restraint"—particularly, in paragraphs 12 (p. 17), 92 (p. 39), 168 (p. 57), 170 (p. 58), 171 (p. 59), 176 (p. 63), 182 (p. 69: "the most logical conclusion is that the UT Δs' main intent is Prior Restraint of Π!"), and 197 (p. 83).)

## B. UT Misses Out

1. How does UT arrive at "the Complaint... does not even present any facts or claim in a manner in which the University could answer or prepare to defend"? Rubenstein believes that Scoggins, in No. 1:16-cv-00475, had convinced himself of having cheated Rubenstein out of any procedural process that AMEND. XIV might deem due him, until exceeding any applicable statutory time periods, and thereby precluding any recourse—such that it sufficed for UT's Motion to Dismiss [Doc. 17] to be based

> on the grounds that all of the claims asserted... pursuant to 42 U.S.C. § 1983 for alleged violations of Plaintiff's federal rights [which Rubenstein stipulated to cover everything] are barred by the one-year statute of limitations.

2. But how could UT have known this if in the dark on underlying facts? That supporting memorandum [Doc. 18] states:

"Despite the length of the Amended Complaint, the facts relevant to [UT's] motion to dismiss are straightforward and limited."

(Oops….)

3. In fact, that memorandum, after correctly tracking that "Rubenstein was a student at [UT] who was permanently dismissed... on Oct 11, 2012," and that his "claims against [UT] relate to his dismissal and are... based on alleged violations of his constitutional rights" [Doc. 18, p. 1], with only the FAC [Doc. 9] and Scoggins's musings to go on, was able to mangle the "facts" together (which, except for all the details, nearly have a foot in reality):

a. Sometime prior to 2009, Plaintiff became convinced that the scientific world was ignoring the work of a certain theoretical physicist… *Id.*, p. 2.

b. While enrolled at UT, Plaintiff apparently came to believe that at least one of [UT's] professors engaged in "fraudulently teaching" by not taking the theories of this physicist more seriously.

c. Plaintiff undertook an ill-advised campaign of repeatedly contacting various [UT] officials, including Robert Moore, the Executive Director of the UT Space Institute, about this alleged "fraudulent teaching" and… related issues.

d. Moore and the other [UT] officials found the nature and frequency of Plaintiff's communications "harassing."

e. On Feb 21, 2012, Moore instructed Plaintiff to limit the scope of his emails to "academic concerns."

f. Plaintiff continued his communications to Moore and others, however, and. . . Moore referred Plaintiff to "student affairs" on April 10, 2012.

g. The Office of Student Judicial Affairs charged Plaintiff with violations of [UT] General Standards of Conduct, and an Administrative Law Judge held a hearing on August 27, 2012, pursuant to [UT's] contested hearing procedures.

h. Plaintiff did not appear at the hearing, and he was held in default.

i. The [ALJ] signed an Initial Order on October 11, 2012, permanently dismissing Plaintiff from [UT]. *Id.*, p. 3

j. Plaintiff filed a Petition for Reconsideration on October 20, 2012.

k. The [ALJ] denied the petition by an order dated January 4, 2013.

l. Plaintiff took no further action to obtain judicial review of the administrative decision.

**(For the record, "*truth*" issues in this "fact" recitation include:**

a. Physics, unlike lying, is utterly verifiable, the most reliable (*Daubert v. Merrell Dow Pharma.*, 509 U.S. 579 (1993)), of all the sciences.

b. Rubenstein had pre-cleared what he wanted to study (see letter in No. 1:16-cv-00475, Doc. 9-1, pp. 30-31) and set out to call *no* one a "fraud." Moore hallucinated this to escape discerning what Rubenstein *did* want to discuss. (Moore's—illogical, however viewed—*lie* to the Sheriff's Department that *started* all this is in No. 1:16-cv-00475 FAC [Doc. 9, p. 78].) What is *sure* is, physics being a mere, verifiable science, Moore was going to have *none of this First Amendment monkey-business on his campus*! And who better to keep it out than Scoggins—trained in law, after all.

c. What was the *subject* of Rubenstein's "ill-advised campaign"? To find *any* faculty person who would hear what it was Rubenstein *wanted to discuss*—after Moore *had immediately, irreparably prejudiced the entire university with his hallucination*! Moore's repeated command that Rubenstein quit emailing and "address academic concerns," when, of course, the physics was both, best describes what he has been left to scrape off his shoe, since.

d. UT's *new* ploy—that Rubenstein's No. 1:19-cv-00189 Complaint [Doc. 1] is "indecipherable"—is most succinctly obliterated by the *facts* shown in "The Defendants Have Been Obstructing Remedy Since 2012."

**4. But, notwithstanding any particular facts, the *point* is that UT, in No. 1:16-cv-00475, faltered not in its usual finesse at decreeing them.**

5. Neither (Rubenstein noted in his Motion for Relief from Dismissal [Doc. 46, p. 16]) did UT (in that supporting memorandum [Doc. 18, n. 2, p. 4]) hesitate in grasping which *officers*, or in what capacity, Rubenstein named in his FAC—which grasp UT maintains firmly in its support to *this* Motion to Dismiss [Doc. 9, n. 1, p. 1].

6. And Rubenstein does not believe his c*laim for relief* to be fuzzy:

> Relief from UT's Tenn. Code Ann. § 4-5-314 order banning him.
>
> Why:
>
> a. It being a mere guise for—ongoing—prior restraint, violating U.S. CONST. AMENDS. I & XIV; and
>
> b. UT having denied Rubenstein all U.S. CONST., AMEND XIV due process to invoke and maintain it.
>
> How: (Presumably) injunction or declaratory order (prospective).

[No. 1:19-cv-00189, Doc. 1, pp. 24-25]

7. The first telltale sign that *might* have peered through was UT's "obtuseness" over, in No. 1:16-cv-00475, Rubenstein's first try at presenting the significance of "accrual date" to this:

> Perhaps it was then-Judge Gorsuch, in *Rounds v. Clements*, No. 11-1220 (CA10 Aug. 31, 2012) ("not binding precedent," though "may be cited . . . consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1") who sald it best (with my underlines):
>
> > Mr. Rounds says he is being retaliated against for exercising his free speech rights, all in violation of the First Amendment and actionable under 42 U.S.C.

> § 1983. . . . [T]his suit falls within the exception to Eleventh Amendment immunity recognized by Ex parte Young, 209 U.S. 123 (1908). . . .
> . . . . Mr. Clements replies that a retaliatory transfer should not be enough to create an ongoing violation for Eleventh Amendment purposes when it is insufficient to toll the application of the statute of limitations in the employment law context. . . . But the simple fact is that the two rules serve different purposes. Accrual rules tell us when a plaintiff has discovered enough facts to allow him to bring a claim. . . . Meanwhile, the *Young* doctrine seeks to give force to the Supremacy Clause by stopping ongoing violations of federal law.

8. Then, in his Motion for Relief from Dismissal of No. 1:16-cv-00475, [Doc. 46, p. 15], Rubenstein presented the example from *Kuhnle Brothers, Inc. v. County of Geauga*, 103 F. 3d 516 (CA6 1997), of a substantive due process claim for deprivation of a presumed liberty interest—in intrastate travel—regarding which it was held that

> [a] law that works an ongoing violation of constitutional rights does not become immunized from legal challenge for all time merely because no one challenges it within [the applicable 42 U.S.C. § 1983 statute of limitations] of its enactment.

*Id.* at 522. *That* interest cannot be presumed more prized than *the rights to speak, associate, or petition.*

9. It appears that Scoggins, on the one hand, now faced with the prospect of *not* having arbitrarily taken all of Rubenstein's relevant constitutional rights, but, on the other, being newly armed from having witnessed Duval, in No. 1:16-cv-00475, straight-face the Court that she

does not "get" what Rubenstein's clamoring is about (*the Academy Cowards illegally expelling him from the actuarial profession without cause or process*) *now* argues (in full),

> [t]he Court dismissed Plaintiff's prior related action, No. 16-CV-475, . . . on the grounds that Plaintiff failed to comply with the pleading standard of Federal Rule of Civil Procedure 8(a). The current Complaint should be dismissed for the same reason. *The allegations cannot be interpreted to state a cognizable claim, much less provide the University notice of any claims that would enable the University to answer the Complaint or prepare for trial.* In short, Plaintiff's Complaint is incomprehensible.

[Doc 9, pp. 1-2, emphasis added]

11. Rubenstein contends that this shift rests on *no* support and is thus not believable, but rather warrants a *judicial estoppel.*

> This rule... generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase" (citation and internal quotation marks omitted).

*New Hampshire v. Maine*, 532 US 742, 749 (2001).

12. Presumably just as good, the Tennessee Supreme Court says that,

> where no oath is involved... the doctrine of equitable estoppel should be applied.

*Cracker Barrel Old Country v. Epperson*, 284 SW 3d 303, 314-15 (Tenn. 2009).

13. Inasmuch as UT asserts that "[i]t would be impossible for the University to answer the Complaint," because it "has no numbered paragraphs"

and "contains no specific counts or causes of action" [Doc. 9], Rubenstein, first, wonders to what this refers. If it is the ordered dates that are perplexing, do they not better aid in comprehension here than would "numbered paragraphs"?

14. Finally, each case that UT raises to support its position was decided in part on some feature beyond pleading and then considered on its merits anyway:

o *Eisenstein v. Ebsworth*, 148 F. App'x 75, 78 (3d Cir. 2005) (Despite, during his more than decade-long litigation, having sued state judges multiple times, including violating the *Rooker-Feldman* doctrine, plaintiff had been advised about his complaints' deficiencies before dismissal).

o *Hardy v. Lawrence County Court of Common Pleas*, No. 1: 15-CV-373, 2015 WL 6964680, at *3 (S.D. Ohio Nov. 10, 2015) (Besides the dismissal being based in part on sovereign immunity, the pleading was *literally* unintelligible).

o *Jenkins v. Orchards Children's Servs.*, No. 11-13356, 2012 WL 3639116, at *5 (E.D. Mich. May 18, 2012), *report & recommendation adopted*, No. 11-CV-13356, 2012 WL 3647071 (E.D. Mich. Aug. 23, 2012) (Regarding those of plaintiff's 42 U.S.C. § 1983 claims that were not brought on behalf of other parties and thus remained cognizable, he denied defendants' Fed. R. Civ. P. 12(e) request for a more definite statement).

## IV. THE ACADEMY COWARDS *ARE* FRAUDS ON THE COURT!

### A. A 12(b)(6) Motion Won by Hiding a Claim Cannot Be Res Judicata

1. Suppose there were so few lawyers in the country as to form only five bar-like organizations and have one nine-member "board of professional responsibility," appointed by the organization presidents, without checks or balances. What if, then, a president developed animosity to a lawyer of whom advantage could be taken because that lawyer is out of the limelight? Of course, it still would be different, since, for actuaries to pull this, they first must find a lawyer specializing in obstructing justice and defrauding tribunals. *The Academy Cowards—who lack the gumption to address Rubenstein—would not have pursued this if Salky, then Duval, and now Lynch, had not assured them that they would have* no trouble *slipping it by law enforcement and tribunals.*

2. In a nutshell, **the *unbelievability*** (not even considering Fed. R. Civ. P. 11(b)) **that Duval could have missed that Rubenstein *did* "state a claim"—centering on *the Academy Cowards illegally expelling him from the Academy and the Society without cause or process*, especially considering that they had had AUSA Perry Piper falsely prosecute him in trying—can lead to only *one* conclusion: she calculatedly *defrauded the Court* into granting her Fed. R. Civ. P. 12(b)(6) motion** (as dissected on pages 15-21 of Rubenstein's Motion for Relief from Dismissal of No. 1:16-cv-00475 [Doc. 46, p. 15-21]) **precisely because it**

**would be deemed "*on the merits*" and thereby *preclude judicial review, which she knew the expulsions could not withstand*!**

3. **To hide Rubenstein's claim** (*centering on the illegal expulsions),* Duval, **first,** (a) **attempted to defraud this Court** with the same lie by which Salky had obstructed justice in having Rubenstein falsely arrested and prosecuted (not a *word* of which can the Cowards back up, and all of which Rubenstein's filings have, under penalty of perjury, virtually *disprove*), **after which** she and Lynch have mostly (b) **distracted the Court** from Rubenstein's actions having any point—as if they could be *oblivious* to that of which they are paid to hide!

4. Lynch's supporting memorandum [Doc. 12] resorts to distractions:

> [I]n this complaint, like all the previous ones, Plaintiff simply repeats the same confused litany of perceived slights caused by Defendants without connecting any of them to actual violations of the law.
>
> This case is simply another example of Plaintiff's history of abusing the court process by filing multiple frivolous claims against the Academy and Mr. Salky.
>
> [T]he filing of this new complaint is clearly brought in bad faith, for the sole purpose of harassing and prejudicing the Academy and Mr. Salky. It is time for the Court to admonish Plaintiff...

**Could a lawyer's petition to halt his or her causeless, processless disbarment be passed off as a** "confused litany of perceived slights caused by Defendants without connecting any of them to actual violations of law"; "simply another example of Plaintiff's history of abusing the court process by filing multiple

frivolous claims"; **or** "bad faith, for the sole purpose of harassing and prejudicing"? **Not believable, *right*?**

(Also, Lynch's raising Salky, a non-party to No. 1:16-cv-00475, in Doc. 11 and 12, is part of the Academy Cowards' ploy, as explained on pages 15-21 of Rubenstein's Motion for Relief from Dismissal of No. 1:16-cv-00475 [Doc. 46, p. 15-21] and further dissected in the next section, on defaulting.)

5. Thus, the Academy Cowards, having, in No. 1:16-cv-00475 defrauded the Court from spotting the claim that they knew Rubenstein *did* state (centering on *their illegally expelling him*), **they, here, try to defraud the Court into rendering that fraud on this Court "res judicata," to seal their illegal expulsions—*further fraud on this Court*!**

6. Rubenstein accordingly stated in his 1:19-cv-00189 Complaint [Doc. 1] that his "preference is that the Motion for Relief from Dismissal of No. 1:16-cv-00475 [Doc. 46] be granted" (over pursuing No. 1:19-cv-00189)—which motion includes as grounds, Fed. R. Civ. P. 60(d)(3) "fraud on the court," as well as Fed. R. Civ. P. 60(b)(6) "any other reason" (in light of having to face *two* Goliaths, notwithstanding the physics absurdity). Presumably this would toll the running of time.

7. Having, at the time of No. 1:16-cv-00475's dismissal, not yet known that it might have been "reconsidered" under a Fed. R. Civ. P. 59(e) motion, Rubenstein also thinks it noteworthy that the statutes of limitations on at least his main claims (still) have not run. Specifically, **now that his claims are unequivocally known, he does not see what harm it would cause, if need be, to reconsider No. 1:16-cv-00475 even *now.*** (Logically speaking, with the Supreme Court having held that it violates "separation of powers" for Congress to require the Judiciary to reopen cases, *Plaut v. Spendthrift Farm, Inc.*, 514 US 211, 217-218 (1995), it would seem to do the same for the Judiciary to invoke res judicata before a statutory time period has run.)

8. **Other noteworthy reasons** against No. 1:16-cv-00475 being deemed res judicata to No 1:19-cv-00189 **include:**

a. Between Duval having confused the Court into ruling in No. 1:16-cv-00475 [Doc. 45] that "the 'American Academy of Actuaries' is not a party to this suit," when she knew it was not meant to be, and the discussion in the next section, on defaulting, naming the Academy and the Society as parties in No. 1:19-cv-00189 is a significant difference from No. 1:19-cv-00475.

b. Duval's claiming that the 1:16-cv-00475 FAC [Doc. 9] is an unintelligible "mishmash" makes its being res judicata to No. 1:19-cv-00189—which most certainly *does* state a claim—an (untenable) paradox. (UT "getting" the No. 1:16-cv-00475 action but, taken at its word, finding the No. 1:18-cv-00189 Complaint [Doc. 1] "indecipherable," does the same, but in the opposite direction.)

c. Lynch's comparing a case (in Doc. 12) like *Federated Dep't Stores, Inc. v. Moitie*, 452, U.S. 394 (1981) (partially overruled anyway), about overpriced clothing, to the Cowards defrauding the Court into helping them cheat someone out of his *livelihood* and *reputation* (notwithstanding harming science) adds to insult. Quoting *Jackson v. Smith*, 387 SW 3d 486, 494 (Tenn. 2012):

> [T]he courts have relaxed the res judicata doctrine in circumstances in which a party has been deprived of a fair opportunity to litigate its claim. . . .
> In addition, the courts have declined to apply the res judicata doctrine when a dispute involved matters of special sensitivity[, which]. . . . most often arise in cases of. . . issues of broad public importance. . . . Also included are cases of continuing conduct, which itself strains the typical application of res judicata, involving substantial public policy concerns. . . . )

d. Finally, in *New York Life Ins. Co. v. Nashville Trust Co.*, 292 SW 2d 749, 755 (Tenn. 1956), the Tennessee Supreme Court, quoting 30 Am. Jur. (Judgments) 202, p. 941), said that

> it is generally held that the principles of res judicata may not be invoked to sustain fraud, and that a judgment obtained by fraud or collusion may not be used as a basis for the application of the doctrine of res judicata.

Which reboots this to the "fraud on the court" that it undeniably is.

### B. The Academy Cowards Have Defaulted

1. Lynch claims in his supporting memorandum [Doc. 12, n. 4, p. 4]:

> ... the prior dismissal under Rule 12(b)(6) as against Mr. Salky also has res judicata effect for the Academy, given that Plaintiff has alleged harm caused by the Academy, with Mr. Salky as its attorney and agent. There should accordingly be no question that the Academy would have been vicariously liable for actions he undertook and was in privity with the Academy for purposes of res judicata.

Lynch also says there [Doc. 12, n. 2, p. 2]:

> Mr. Salky was not properly served in this case.

**2.** First—that is, beyond the fact that the Academy Cowards' entire stance is *a fraud on this Court*, and, assuming that Lynch meant to say that Salky, not the Academy, is in privity with the Academy—**Rubenstein, in the No. 1:16-cv-00475 FAC** [Doc. 9, pp. 11-16] (updated in Doc. 46-2), **carefully charted the apparent membership of** the 18 U.S.C. § 1961(4) association-in-fact enterprise that, by conspiring not to address him, leaves him to call only **the "Academy Cowards."**

3. **Then, Rubenstein, in 1:16-cv-00475, carefully made the AO440 summons to, and had it served on**

Steven M Salky, on behalf of the Academy Cowards[,]

merely because Salky—as having had Rubenstein falsely arrested and prosecuted (including through *this* Court)—is the most *conspicuous* Academy Coward.

4. Besides, the very *nature* of Rubenstein's No. 1:16-cv-00475 FAC [Doc. 9] makes plain that Rubenstein neither had, nor has, any *real* interest in naming Salky in any capacity *besides* as an Academy Coward (the most *conspicuous* one).

5. But, after Duval and Lynch moved this Court for Admission *Pro Hac Vice*, professing between them to be "counsel for Steven Salky" *only*—**a vital part of Duval's scheme to hide Rubenstein's claim** (which centers on the Academy Cowards' illegal expulsions) **was to present Salky in his capacity as Academy attorney *only***, by misdirecting all responses to be about Salky or his "clients."

6. Thus, in No. 1:19-cv-00189, after naming Duval an Academy Coward—and, to be safe, including the Academy proper and the Society proper as Defendants—**Rubenstein carefully made *this* AO440 summons to, and had it served on**

The Academy Cowards c/o Catherine Duval

7. But, **now, Lynch**—in No. 1:19-cv-00189's sole Motion for Admission Pro Hac Vice **professing to be** "counsel for Steven Salky and American Academy of Actuaries" [Doc. 10])—**point-blank, presents Salky, again, *only in his capacity as Academy attorney*!**

8. The only *real* conclusion, then, must be that ***the Academy Cowards***—named as the *sole* Defendants in this part of the matter in No. 1:16-cv-00475—***there, defaulted, and seem to be doing the same in No. 1:19-cv-00189.*** (Rubenstein thus considers filing a Fed. R. Civ. P. 55(a) request for entry of their default.)

9. (Rubenstein's not having been lawfully expelled from the Academy should leave him in privity with Salky—in his capacity as Academy attorney—the same as any other member, anyway. Towards this, in a reply email to Salky, on October 25, 2014, Rubenstein warned him,

> you can't represent me, because you have to be honest.

[No. 1:16-cv-00475, Doc. 9, p. 89].)

Respectfully submitted on

September 13, 2019
Date

Steven Rubenstein

Steven J. Rubenstein
502 River Street
Chattanooga, TN 37405
sjrubenstein@me.com
423-580-4610